my all right here morning good morning morning is real and is appearing from pittsburgh by video mister congress uh... you were in person uh... i uh... would call the case for this morning united states of america versus billy joe reynolds before i uh... begin argument though it cannot help but uh... reflect and make comment on something that judge fisher just brought to my attention having tuned in late last evening to the steelers football game uh... i missed a game ceremony which judge fisher advises me included uh... honor tribute to uh... veterans tuskegee airmen one of whom was miss freelance father attorney who's well known to uh... members of this court and all of us from western pennsylvania and uh... judge fisher and i saw just this past friday uh... a great tribute to a great man and i hope that uh... none of you considers it uh... inappropriate for this uh... court to note that notwithstanding the adversarial nature of the proceeding into which we will now move because uh... attorney freeland is uh... very special fellow and we take note of that and please please do note that it was judge fisher who recognized there along the sidelines in a driving rainstorm being honored i uh... i thought i noted that i had not seen it and you had i uh... i was i was working at the time judge fisher i had all right we'll move to uh... we'll move to argument by the way how did the game come out i haven't even had a chance to check they prevailed they did notwithstanding the lousy start thank you all right uh... miss freeland you may go forward please thank you your honor and if i could before beginning just say uh... that i will pass that on to my father i appreciate the recognition and i'm glad that uh... he was able to make it last night and i will make a point of noting that it was judge fisher uh... who recognized him from the sideline i missed it because i also was working uh... may it please the court my name is lisa freeland and i'm here on behalf of billy joe reynolds and uh... per the court's instructions in the memo that was filed yesterday i will begin with the standard of review issue uh... the as the court knows the government insists that where the issue is one of good cause for failure to comply with the APA's procedural requirements that the only applicable standard of review is arbitrary and capricious and they base that argument on the fact that good cause is an inherently factual inquiry uh... relying on agency deference uh... agency expertise i'm sorry and that great deference in that area is required i would like to point out at the outset that the good cause invocation in this case is neither factual nor did it involve an exercise of agency expertise uh... that is with respect to the reasons that were offered for good cause the attorney general instead decided to rely solely on the legislative objective of SORNA as a basis for its assertion of good cause and the dangers apparent miss freeland let's let's begin uh... or at least make some reference to a textual source and seven oh six has language in A and D which could lead us either way on this does it not absolutely your honor and i was just about to get there i mean the statute itself belies the suggestion that there is one and only one and only standard of review that could be applied in this section it sets forth arbitrary capricious abuse of discretion otherwise not in observance with procedures required by law and i did want to point out when you're looking at that kind of laundry list of potential standards of review there is a case that was cited in the government's brief with respect to harmless error not statute of review mobile oil v department of energy it's government's brief at nine and i think it best explains why in situations like the one we're dealing with given the laundry list of choices  of review none of our cases have dealt with this uh... issue though a sub A versus sub D have they? i'm sorry your honor i didn't hear the very beginning of that none of our cases from this court have dealt with standard of review subsection A vis-a-vis subsection D well um i agree that no case of this court has expressly or explicitly held we select one standard of review over the other but as set forth in my supplemental brief uh... on page nine uh... there are about a half dozen cases of this court uh... that have uh... addressed the issue of good cause for failure uh... to bypass the APA's procedural requirements uh... and i'm sorry your honor it's page nine of my supplemental reply uh... setting forth those cases not one of them has identified the arbitrary and capricious standard as the standard to be applied in a good cause evaluation several of them have uh... SBC and NRDC for example have expressly applied the without observance of procedure of law standard uh... although elsewhere in their opinions they are quite aware that arbitrary and capricious was among the choices they just selected not to apply it to the good cause evaluation what should we take relative to standard of review from our Schweiker decision as i read it it seems to suggest a mixed standard well uh... i don't agree that it's a mixed standard and i believe that it applies both standards and as i think about this your honor as a litigant and you look at the you look at 706 in some of these cases it may very well depend on what the parties assert if a party comes to the court in the first instance and decides to say i'm challenging this agency action because i believe that it was uh... a decision that was made without observance of procedure required by law that may be the issue that the court goes on to resolve if the litigant comes forward and says i believe the decision was arbitrary and capricious the courts are only dealing with what the litigants put before them and if a litigant does not believe that it can satisfy arbitrary and capricious it may come forward and argue something else that's equally available under 706 and so i see Schweiker as a case where the litigants framed the issues for the court and it raised both arbitrary and capricious and without observance to procedure required by law and that's why as you read the court's decisions both the district court decision and the third circuit's decision that it addresses both before we move on let me ask my colleagues if they have any questions relative to standard of review alone before we move on to to other issues has this recognized uh... a sliding scale interpretation of arbitrary and capricious in this or a similar context uh... and your honor could you explain what you mean by a sliding scale of arbitrary and capricious there are cases out there that say when you're applying the arbitrary in the cases where you're applying arbitrary and capricious the amount of deference that's due to the agency differs materially depending on what the issue is okay yes yes your honor i understand the question and i think that if arbitrary and capricious were to apply and i think i see it a little bit differently but if arbitrary and capricious were to apply and you were looking at a sliding scale there seems to be support in the cases that more deference would be required where agency expertise with respect to facts that are uh... really primarily within the province of the agency are involved as opposed to where we're really dealing with legal determinations and in response to that question i guess the reason i see it differently is i see that you would actually in an expertise factual situation select arbitrary and capricious and in a different situation select another and i want to just if i can very briefly go back to where i started and explain to you what mobile oil said because i really do think that it explains this mobile oil cited 706 all of the different standards it then explained what arbitrary and capricious means and mobile oil again is government's brief at nine uh... although that's in its harmless error section it did not address this case with respect to standard of review but this is what the court says and after setting forth the statute and a definition of arbitrary and capricious it says an agency's procedural compliance with statutory norms however is subject to arbitrary and capricious the reviewing court having confidence in this area must satisfy itself that there was procedural integrity in the promulgation of the regulation and what the court is saying is that uh... and it's pertinent to your question judge stapleton is that where the reviewing court has the confidence to assess under a less deferential standard the decisions of the agency it is not required to show that kind of deference and in situations where the court does not have that particular confidence that a more deferential standard of review might be appropriate let's uh... this court let's let's given the amount of time we have remaining because there are ten o'clock arguments uh... which placing some pressure on us here uh... i understand your honor move to whether or not it matters what standard of review applies or to ask the question another way what if in fact arbitrary and capricious is the appropriate standard of review do you lose uh... no your honor and actually i i mean there's part of me that understands that because of the lack of clarity in this area that this court might want to once and for all say what the standard of review is but really under the facts of this case it's not necessary because as other courts have recognized uh... the attorney general's decision cannot be upheld under either arbitrary and capricious or a de novo standard of review and uh... you know i think that you know you mentioned the amount of time that we have i mean these issues are exhaustively discussed in the cases and in the briefs but i want to point to a few that i think explain best why the government loses even under an arbitrary and capricious standard the most notable is that there's nothing in the administrative record to support a rational connection between the facts in the record and the decision to determine that february twenty eighth two thousand seven was the date upon which no further delay could be countenanced the attorney general himself delayed seven months from the passage of SORNA and then decided out of the blue and without explanation that february twenty eighth not thirty days later which would have allowed time for notice and comment and publication that seven months was the period of delay that could be countenanced and not eight and that in and of itself i would say that one reason makes the decision arbitrary and capricious as we understand that Ms. Freeland, how was an additional thirty days going to inform the attorney general's decision any better as to whether or not the question of retroactivity was yes or no well your honor i think that the same way that it does in every situation where an agency follows the administrative procedures act requirements it gives interested parties an ability to explain some of the reasons about how how the agency should move forward and in this case as the supreme court noted and other cases also have noted there were substantial nuances with how and let me just answer specifically with what i think could have happened if the interested parties had come forward and said look as the supreme court recognized there are complexities and complications with how we're going to get people to register under SORNA the attorney general could have said I'm specifying that SORNA is to apply to all pre-enactment offenders and until we can figure those things out people are required to register under their state systems that's something that the attorney general could have done in thirty days taking into account the comments and the problems and then taking the time thereafter to figure out precisely how people like Mr. Reynolds who were released from prison before SORNA's enactment and the statute provides no way for them to register under SORNA or comply the attorney general could have done that and taken additional time as he did when proposing guidelines and i think that's an important point also judge fisher because the attorney general's actions in february of two thousand seven although it purported to make SORNA immediately effective it did not and could not until the guidelines were thereafter promulgated giving people a way to actually register and comply with SORNA uh... and i'd take your question partly to be about good cause and partly to be about harmless error and i just in case i don't have the time i do want to move to harmless error but let's make sure that uh... that we've exhausted questions on cause uh... good cause first i was going to say and i think you answered my follow-up question in that uh... you would you would proffer the same answer as to a question about harmless error yeah and more specifically uh... the the kind of nothing would have changed attitude about harmless error is just not borne out in the law uh... it if the harmless error analysis were to be that the comments would not have in fact changed anything no agency would ever have to comply i need to stop you there Ms. Freeland not because of the like but because the question i have really is a question i think requires resolution before we go on to talk specifically about harmless error and it's a an important question to me and one that i don't believe the parties have touched on and frankly i've not seen it addressed in any of the cases i've looked at and i think i've looked at all the cases both of you have given us this is an unusual case in my experience and and based on my research it's one could look at it as an APA case or one could look at it as a criminal case it is i suppose a criminal case with an APA layer placed on it which then brings me to the question when we must examine harmless error who has the burden as to harmless error if this is a criminal case doesn't the government have the burden of demonstrating no harmless uh... no yes i think your honor it isn't addressed in the briefs but i am prepared to answer that question now because i just looked at it this weekend and of course if you view this as a criminal case then the government does bear the burden but there's support for that even in the administrative law context initially harmless error analysis has not been applied by this court or by the supreme court where we're talking about a complete failure to comply with the APA only when compliance is insufficient but let me get on with it. where there have been defects of some kind or some abbreviation or what have you but not an outright refusal to follow the notice and comment procedure exactly and some courts have found that even where there's a complete absence the dc circuit for example has found that even where there's a complete absence there may be a requirement of a limited showing of prejudice under 706 but the courts have also said that where there is a complete failure uh... and where there is uh... the the expertise of the agency has not been involved that the burden is not on the person challenging the uh... agency's actions but it's on the agency to show that there is certainty and that it is clear that the comments could have had no impact on an open-minded agency arbiter alright Ms. Freeland since we are now beyond the time let me ask Judge Fischer and Judge Staple if they have any other questions and of course we'll be having you back on the panel alright thank you very much and when I come back we'll have you back on rebuttal and I'll try and answer that burden question with some citations for you Mr. Kokos, may it please the court Donovan Kokos on behalf of the United States uh... I want to begin by addressing something you said Judge Smith which is is this case a criminal case or a criminal case with an APA overlay the case I cited my 28-J this week uh... last week was uh... United States versus Parks a first circuit case uh... from October published that case says among other things that the SORNA regime the legislation and the registration is a civil regime eight circuits have so held the first circuit and the fifth through eleventh circuit all have so held this court I think would have so held except Shenandoah came along because I I briefed it that way at page thirty four of my original brief that I filed three years ago so to the extent that that has any impact on the standard of review or the burden of proof at the harmlessness stage I think the court needs to look at those cases and maybe what I'll do is just 28-J all the ones that have come down since then to talk about that. I think that would be helpful from both sides since it has not been addressed in the brief uh... as to the standard of review I understand Mr. Reynolds wants to have without observance of procedure review I don't disagree with the tenor I think of your question Mr. Judge Smith which is that the Schweiker case seems to contemplate maybe a dual standard of review I'd call it a bifocal standard of review as opposed to mix right as opposed to mix and what I mean by that is this this is the principle I think that you can apply if an agency has discretion to take a certain action and engages in some fact-finding in the exercise of that discretion then I think under Schweiker arbitrariness review applies if the agency doesn't have discretion because the rule requires the APA requires it to do something then that review is for without observance of procedure the example I would give it is most beautifully laid out by the cases cited by Mr. Reynolds around page eight or nine of his brief because he says I've cited all these cases that show without observance of procedure review applies I looked at them all I didn't discuss them because they're all inapposite but now I wish I had because they illustrate my point the NRDC and the SBC cases involve situations where the agency said we're not required to engage in rulemaking at all so it didn't even try to invoke good cause in that situation that when an agency is wrong about that its decision is reviewed for without observance of procedure. There's some language and it is just language but it is in the discussion of the standard of review in the NRDC case and I'd like to know what you think if anything this says as to what our standard of review could be here the exacting standard applicable in determining whether an agency has failed to comply with the procedural requirements for its action contrasts with the deferential standard applicable to substantive challenges to agency action exacting standard relative to procedural requirements and we know from all the cases without reciting them all the extent to which we have been told that the good cause exception is to be looked at narrowly and it's not to be invoked with any great frequency what impact should that have on our determination as to what is the standard of review plenary versus abuse of discretion I don't think it impacts the standard of review now it may impact how the court applies whichever standard does it have an abuse of discretion standard it may actually I mean Schweiker talks about arbitrariness and abuse of discretion for my purposes I would settle for an abuse of discretion standard of review of this to the extent that that's not even as deferential as arbitrariness because I recognize that this might be this is a fact finding made within the context of the legal invocation of good cause but the other cases that Mr. Reynolds cites don't get him anywhere either because he cites American Iron and Steel and that's a case where the agency invoked good cause but then promulgated a rule with such vague notice that the parties had no idea the rights were being affected now obviously nothing in the APA permits you to promulgate vague notice I'm sorry it gave such vague notice nothing in the APA allows you to do that so that's reviewed for without observance of procedure and Sharon Oil I think is the last one, Sharon Steel that one involved a situation where the agency invoked good cause but then promulgated a final rule before notice and comment and that didn't happen here. Can we reconcile American Iron and Sharon Steel with Schweiker? I think so to the extent that each of those both of those cases involve an invocation of good cause but in American Iron the agency essentially deprived the parties of all notice that under that circumstance I think it's without observance of procedure because the APA doesn't give an agency discretion not to give parties notice and Sharon Steel it gave good cause, it articulated good cause, it gave notice but then by asking for comments on a final rule that was tantamount to saying we're not really interested in your comments none of that happened in Schweiker and none of that by the way is happening in my case the only other case that Mr. Reynolds cites that gave me some pause frankly was the Mack Truck case out of the DC circuit where it said evidently we're not required to give any deference here's the problem as I see it with that case Mack Truck overlooked SEC versus Chenery that's the case that says 1947 Supreme Court says essentially what you have to do when you're evaluating agency action is look only at the reasons the agency gives courts have applied that principle to the good cause articulation the National Customs Brokers and Forerunners case that I cited at page 25 of my brief does that when you look back at Chenery it says the reason we do that is that disciplines our deference to what has happened in other words we know what we're deferring to, we're deferring to the agency and not some post hoc rationalization when you look back at National Customs Brokers and Forerunners the court then goes on to say we'll apply arbitrary and capricious review to an invocation of good cause that's Federal Circuit 95 the Mack Truck case didn't cite Schweiker, it didn't note the National Forerunners case National Customs Brokers case and it didn't have to because they're out of circuit but I think I suspect that Mack Truck you know avoided deciding this issue because it said under whatever standard review we apply we're going to find X I think it wasn't briefed there so this court I think will be the first court to have dealt with this issue after a full briefing I think under whatever standard review the court applies it doesn't really matter because I think even if you apply without observance of procedure which would essentially be a de novo review then I think the court's assessment of good cause just sort of turns on a visceral notion either the court finds and believes that the Attorney General's articulation was good enough viscerally or it doesn't and if the court thinks one thing or another I doubt I could talk it out of that. One thing we know for sure is that both you and Ms. Freeland agree that it doesn't matter what standard review applies. I think for this case it doesn't. Each of you wins. The reason, well yeah I think I do the reason I fought so hard for it is I can't foresee in the future whether it may matter to other agency action and so since that's this is kind of fallen to me in this case I feel like I have to at least put the cases out there whatever the court decides it decides of course but in this case I think the important thing to note the only I think response that Mr. Reynolds has to the statistics that I gave about the one month notice and comment period is to essentially, not essentially, literally say that our Attorney General was a hypocrite for failing to act sooner in that case and it's just simply unfair as I said in my brief the Attorney General initially was of the impression that SORNA the statute applied to pre-enactment offenders in and of its own force it was only when the AG started hearing arguments from defendants. But it is true is it not Mr. Kokos that if the Attorney General had in the absence of an interim rule taken the same amount of time to promulgate there wouldn't have been anything in place upon which Mr. Reynolds could have been prosecuted. Well that's right that just shows the wisdom of why of the AG promulgating the interim rule in the first place because had this case gone up to say the Supreme Court it would have the Supreme Court agreed with Mr. Reynolds that you needed a rule promulgated by the agency to apply SORNA to pre-enactment offenders so that would be years of indictments that would have to be dismissed. Let's spend some time on the wisdom of having promulgated that interim rule. What was it? What was the benefit of it and what was the, what reasons can justify for going to the citizen comment period to ask a question in other words what's the cause here? Well apart from the raw numbers which Mr. Reynolds doesn't dispute I mean I think those, the answer to your question has more to do with the difference between SORNA and the Jacob Wetterling Act which preceded it. Wetterling punished this, essentially this crime only as a misdemeanor and it was keyed to what the state requirements were so the Wetterling Act was responsible for all of these loopholes and idiosyncrasies that SORNA was prescribed. By reference to the raw numbers you're referring to those criminal offenses that did occur and or would have occurred. Yes sir. But I'm looking for a limiting principle here because I will assume anyway that every time Congress acts in some remedial way they intend to address a problem by trying to ameliorate the problem, by trying to limit its occurrence to provide remedies for criminal or otherwise for those infractions that occur and create the wrongs. So if cause is always the fact that these wrongs are going to occur, what limiting principle can we apply because that provides government with an excuse to forgo notice and comment every time you've got a new piece of legislation. Theoretically it would except I would focus the court on the nature of the wrongs at issue here. This is a public safety issue. That's why the SORNA regime is a civil regime with criminal penalties but so is the EPA, so is the FAA. Those are public safety at heart regimes. So that's why I think what the AG did was supported by good cause. Mr. Koukos, let me ask you this. I'm not sure that one of the statements that Judge Smith made was totally correct in that if you had waited 30 days, if you had given 30 days notice, the rule would have been in effect at the time Mr. Reynolds failed to register in September because this was, I think, in February and if you waited 30 days it would be March and the rule would be in place and he would have been required to register. But more important than that, in effect, you argued that you needed, the good cause was that if the Attorney General didn't promulgate the rule without notice, that people would go unregistered. Isn't that in error? Because at that time people like Mr. Reynolds were still required to register under their home state statutes in states like Missouri, which he had registered. Right, but the issue, Your Honor, is that... And he was also required in that New Jersey statute to notify them if he had moved to another state. So where's the harm? But under the patchwork that preceded SORNA, not all states required sex offenders to register when they showed up from different states. So as to Mr. Reynolds, Your Honor's right, he was required to register in both places, but this is broader than just about Mr. Reynolds. This is at age, not knowing Mr. Reynolds existed and just knowing that there was this broad class of sex offenders out there who could really go off the grid by the time you got SORNA up and running after a notice and comment period. And keep in mind, Your Honor, I mean, the Attorney General entertained comments on the interim rule until December 29, 2010. He considered this very carefully and considered it for years. But he had already told them on notice of the guidelines that it was... It had already been determined that it applied to pre-act offenders. Correct. And he didn't really ask for any comment. But, Your Honor, in the guidelines themselves preceding the SMART guidelines, the Attorney General received two months of notice and comment. So he got a total of three months of notice and comment. That's three times as much process as this class of This is somehow inadequate. It would be to punish the agency, I think, for taking extra deliberation instead of the minimum that it could have done. Sure, the AG could have promulgated the rule after 30 days notice and comment at the very end of that, at midnight, made that the rule, but he didn't do that. I'd like to turn quickly to... Did all states require at least notice to the State of Registration if you moved out of state? I don't know for certain whether they did. Well, I think that is an important point. You said in response to my question that there was a difference. My recollection that all states had statutes and all state statutes did, in fact, require notice to that state that they were leaving the state and going elsewhere. And I don't know the answer, but let me give you an example. Here in Pennsylvania,  And the problem was, because of a drafting error in the statute, someone forgot to put a penalty. So the Attorney General of this state had to be dismissing a bunch of state-level indictments for sex offenders crossing state lines. SORNA was designed to close loopholes, accidental loopholes like that, and sometimes just inadvertent loopholes to states requiring different amounts of data by requiring a uniform amount of data and uniform notice. But it seems to me the amount of gap factors into the good cause equation. It may. It may. And it just, again, the Wetterling Act just punished this as a misdemeanor, so it was rarely used. If you look on Westlaw, before SORNA came down, 2250 prosecutions were unusual because the states punished those at least as much as the federal government did. I'm out of time, I see. We'll give you a few more minutes and use it in part for a question that I have, and that is, if we've determined that there was no good cause here to accept from the notice and comment requirements, what's the legal basis then that remains, if any, for Mr. Reynolds' conviction? If there's no good cause? The interim rule is the legal basis. The interim rule is the legal basis, but he still would need to show harmlessness at that point. And that burden would still be his under Shinseki B. Sanders because, as I mentioned, this is a civil regime. I'm not entirely sure of that, but we'll hear both sides by way of supplemental briefing on that question of burden. All right. Go ahead. I think you wanted to make... Oh yes, I wanted to talk about the harmlessness issue very quickly. The only case that's dealt with this issue after full briefing by a full panel is the Johnson case out of the Fifth Circuit. It's also the only case that's discussed it after the AG promulgated the final rule where he addressed all of the comments he'd received in response to the interim rule. That's important because Cain and Val Verde and UTEC seem to assume that the AG had solicited the comments disingenuously or had no intention of addressing them and that was just incorrect. The other thing is Johnson's the only of those cases that cites the Shinseki B. Sanders rule, which is that in an agency, in an AP review, you don't presume prejudice. Prejudice has to be shown by the party challenging the rule. In this case, Shinseki goes on to say this differs from criminal rules, but again, if I'm right about this being a civil regime, I think that that applies and affects directly the burden of proof here. And I would say this, even if the court were to give me the burden of proof for the sake of argument, I'd be happy to take the ultimate burden of persuasion, but he's got to bear the burden of production and what I mean by that is this. Under Johnson, the court says the defendant has to show what he would have argued and argue what difference it might have made. I didn't kick about him filing a supplemental reply because I wanted to hear the answer to that question. As of today, I still don't know the answer. He's not saying what he would have argued if he'd been given the chance. And I know Mr. Reynolds says that the Supreme Court and the Third Circuit never held that a failure to articulate good cause for dispensing a notice and comment can ever be harmless. That's true, but what he fails to note is the Supreme Court's never considered the issue. This court's only considered the issue in Sharon Steele, which I distinguished already, and a case called Moby Chemical where the regulation at issue violated the enabling statute and that's not what happened here. So the last bit I would like to point out is what he, because these are very carefully chosen words, what he doesn't notice in the past 10 years there have been, I found, four other cases besides Johnson which have applied this standard of review to a failure to articulate good cause and they've essentially put the burden on the defendants to say what they would have said and why they would have said it and what difference it might have made. And those cases are, in addition to Johnson, there is Miami-Dade County versus EPA, which is an 11th Circuit case from 08. There is a Conservation Law Foundation versus Evans, First Circuit 04. Mr. Reynolds cites that. The City of Waukesha versus EPA, DC Circuit 2003. And Safari Aviation versus Garvey, 9th Circuit 2002. Those cases all apply this standard of review to notice and comment failures. What do you say to the observation that Congress, when it passed the APA, decided that in the absence of notice and comment, one, if there was a public interest served by a notice and comment requirement, that agency decision making will be wiser and more insightful and also it will be more, there will be a benefit from having participants who are interested participate in the process. Now, if you don't have notice and comment, there's damage to the public interest. There's harm. Well, in this case, Your Honor, there was prior notice and comment. That's what makes this case so unusual. The AG got to hear what the public would say about this through the arguments defendants were making during the initial SORNA indictments, pre-interim rule. And then the AG took almost three years' worth of notice and comment and deliberated about this. But I would point out that the Shinseki case, this is where we get to the question, what is the rule of prejudicial error? Because when I read that 706, I thought, that's funny. That definite article sounds like they're talking about something specific. And sure enough, under Shinseki v. Sanders, it cites 28 U.S.C. 2111. And that rule says, we ignore errors that don't have an effect on the substantial rights of the parties. So this is a long way around of saying that I understand Your Honor's point that there is some inherent public value to pre-promulgation notice and comment. But at the harmless error inquiry, we look to see whether the defendant was prejudiced. That's what the substantial rights of the parties, he's the party here. So. Thank you very much. Rebuttal, Ms. Freeland? Yes, Your Honor. I guess I'll start. I'm not going to spend the time to give you the brief if the court wants supplemental briefing on that issue. Okay. But I do want to make a couple of points about harmless error. First of all, the points made in the briefs, but it just simply is not so that the Attorney General in the interim rule addressed the arguments that could have been made in a notice and comment period. The issues that were raised in litigation had to do with ex post facto concerns, retroactivity, not about the nuances of how SORNA was going to be applied to pre-enactment offenders. And the court need only compare the discussion of the Attorney General in the commentary to the interim rule with the later discussion in the commentary to the final rule where it attempts, although very vaguely, to address such issues to see the difference and to see that the interim rule just simply did not touch upon those issues at all. In addition to that, he agrees that this court and the Supreme Court have never addressed or applied harmless error where there's a complete failure to comply with the APA. And he suggests that it's because it never faced the issue. Well, every time these courts found an error of law and bypassed, if you will, harmless error analysis, it may not have expressly said, we're not applying it, but the fact that it didn't apply it speaks for itself. In terms of the burden of production, the arguments are in the record. They were made in the Supreme Court. They were made by groups representing interested parties before the Attorney General when there finally was a notice and comment period. And the Supreme Court in Reynolds has recognized that there certainly were nuances that Congress was fully aware of when it passed SORNA that it left to the Attorney General to determine how SORNA would be applied, not whether. That may be an easier question than how SORNA would be applied. I do want to point out, I was going to file a 28-J letter. I did not have an opportunity to do that this weekend. Mr. Kokas mentioned that Johnson is the only case that was decided after the AG promulgated the final rule and it applied harmless error. I'd like to note that the District Court for the District of Vermont is the only case to have addressed this issue after the Supreme Court's decision in Reynolds. And that decision was issued on August 29, 2012, and it was just last week that the government withdrew its appeal before the Second Circuit. The Second Circuit granted the government's motion to withdraw an appeal of the very issues that we're talking about here. And I will follow up this 28-J letter that identifies the Mullins case and the issues that were addressed there. Suffice it to say, Mullins case... What was the name of that case? It's United States v. Mullins, M-U-L-L-I-N-S, decided by Judge Sessions in the District of Vermont. And suffice it to say that the Mullins court recognizes the very things that I argued in my brief, that the Supreme Court's decision in Reynolds substantially changed the landscape with respect to good cause when the issues, the very dangers and harms that the Attorney General found required immediate action are the same ones that the government was relying on to argue that the statute meant something else. And the Supreme Court said that those arguments were overstated, and in fact, Congress understood that delay was a necessary part of this scheme and that immediacy was not the primary goal. All right. Well, the time expired for rebuttal a little while ago, so we will need to bring these proceedings to conclusion. Let me first compliment both counsel on their advocacy, both the supplemental briefs that have been very helpful and the argument this morning that has been very helpful. Those arguments, the introduction of an issue or two which we did not have before or really did not hear about before has assured that this was really not deja vu all over again, notwithstanding the remand from the Supreme Court. This is an important case, and we will take the matter under advisement. I would ask also that we have a transcript of this oral argument prepared, ask counsel to submit the supplemental memoranda that I referred to before on the burden issue. I would request that they be short no more than seven pages filed ten days out from today or by ten days out from today. And with that, we will take the case under advisement.